**COOPER INDUSTRIES, INC., Plaintiff,**

v.

**CHANNELLOCK, INC., Defendant.**

Civ. A. No. 91–27 Erie.

United States District Court,
W.D. Pennsylvania.

Feb. 27, 1992.

J.W. Montgomery, III, Ansel M. Schwartz, Wayne C. Holcombe, Cohen & Grigsby, Pittsburgh, Pa., William K. Wells, Jr., Kenyon & Kenyon, Washington, D.C., for plaintiff.

Howard N. Aronson, Lackenbach, Siegel, Marzullo & Aronson, P.C., Scarsdale, N.Y., Marcia H. Haller, MacDonald Illig Jones & Britton, Erie, Pa., for defendant.

MEMORANDUM OPINION

MENCER, District Judge.

Plaintiff Cooper Industries, Inc. ("Cooper") moved for summary judgment on

July 19, 1991. In the motion Cooper asks this court to declare that: a) the registration of Channellock, U.S.Reg. No. 1,535,106 is invalid and unenforceable; b) that the registration be stricken from the Principal Register of the U.S. Patent and Trademark Office; c) that the defendant has no other protectable, proprietary interest in the color blue or any other shade or hue thereof; d) that the plaintiff has not infringed upon or misappropriated any proprietary interests of the defendant; e) that the counterclaims of Channellock be dismissed with prejudice and judgment entered in favor of the plaintiff; and f) that plaintiff be granted costs and attorney fees.

On September 24, 1991 defendant Channellock filed a motion to exclude exhibits 3, 4, 5, 6, 7, and 9 that the plaintiff had submitted in support of its motion for summary judgment. On November 21, 1991 this court entered an Order accompanied by a Memorandum Opinion denying the defendant's motion to exclude those exhibits. Subsequently on January 13, 1992 Channellock filed its memorandum in opposition to plaintiff's motion for summary judgment. The defendant asserts that the motion for summary judgment should be dismissed in its entirety as material contested issues of fact exist. This court concurs in that assessment, and using the prevailing standards for summary judgment, the motion of the plaintiff for summary judgment will be denied.

Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." An issue is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the "nonmoving party". As to materiality, the substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989).

In *Williams*, the Third Circuit defined the amount of evidence necessary to make an issue "genuine." The appellate court explained that the affirmative evidence adduced by the nonmovant in opposition to the application, regardless of its direct or circumstantial nature, "must amount to more than a mere scintilla, but may amount to less (in the evaluation of the court) than a preponderance." 891 F.2d at 460–61, 464. As to materiality, the substantive law will identify what facts are material. When reviewing a motion for summary judgment, this court should resolve all reasonable doubts and inferences in favor of the nonmoving party. *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa.1988).

The nonmoving party, in this case Channellock, must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations in its pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard leaves undisturbed the traditional rule that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513. Summary judgment motions thus require judges to assess how one-sided evidence is, or what a "fairminded" jury could "reasonably" decide, an inquiry that obviously must be done on a case-by-case basis. *Williams, supra*, 891 F.2d at 460.

At the core of the present dispute is the color referred to by the parties as "Channellock Blue." Channellock has obtained a registration of a trademark under U.S. Registration No. 1,536,106 for a shade of the color blue for use in connection with the hand tools that it manufactures. The plaintiff argues that color without more is not capable of functioning as a trademark. Cooper believes that Channellock has no protectable and enforceable interest as a matter of law. They also argue that even if color were capable of functioning as a trademark, the use must be exclusive in the marketplace so that the feature comes to

identify the tools as emanating from only one particular source. Cooper believes that Channellock's use of the shade of blue was not exclusive in the period prior to its trademark application. Cooper also believes that the color has a specific utilitarian purpose, then as a matter of law and public policy it cannot be exclusively appropriated to serve as a trademark to identify any one single source. Cooper also asserts an equitable claim that asserts that Channellock made false statements and misrepresentations in the earlier trademark application process, and as a result should be barred from obtaining any benefit from the registration of the trademark.

Defendant Channellock asserts that Cooper is putting misplaced reliance upon decisional law which concerns the creation and enforcement of color trademarks which have not been registered, which is inapposite to the case at hand. The defendant believes that pursuant to Section 7(b) of the Lanham Trade-Mark Act (15 U.S.C. § 1057), Channellock's Registration is prima facie evidence of its validity and registration, as well as its ownership and exclusive right to use the Registration in commerce.

The defendant believes that there is only one case that is factually similar to this one, that is the recent case of *Qualitex Co. v. Jacobson Products Co., Inc.,* 21 U.S.P.Q.2d 1457, 1991 WL 318798 (DC C Calif.1991). That court held a trademark certificate of registration to be prima facie evidence of validity and ownership of the mark. The *Qualitex* court also found that the burden on the party challenging the validity of the trademark is to prove by a preponderance of the evidence that the trademark holder's federal registration is invalid. The court also applied 15 U.S.C. § 1057(b) in its analysis. The rule states:

A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate subject to any conditions or limitations stated in the certificate.

■ It does appear to the court that a distinction should be made between the creation and enforcement of color trademarks which have been registered and therefore carry with them federal prima facie rights such as Channellock has obtained, and those that do not. The court agrees with the defendant that the cases cited by the plaintiff apply to common law trademark rights rather than to a registered trademark such as that which is currently before the court.

■ It also seems to the court that summary judgment is not an appropriate vehicle to determine that a presently issued registration that the law declares has prima facie validity should be declared invalid by this court at this early stage of the proceedings. For instance, the plaintiff alleges that Channellock made numerous statements and representations to the United States Trademark Office during prosecution of the trademark application that "were subsequently found to be false or misleading." (Complaint of plaintiff at page 5). Defendant vehemently denies that it made any such misleading statements. For this court to enter judgment that at this stage of the lawsuit in favor of the plaintiff would be to invalidate the earlier Trademark Office proceeding without sufficient evidence before this court. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. It appears to the court that the plaintiff is requesting the court to make just that sort of credibility determination regarding what took place at the earlier Trademark Office hearing. The court must obey the mandate of 15 U.S.C. § 1057(b) and regard Channellock's certificate of registration as prima facie evidence of the validity of the registered mark at this point in time. The court is not currently in a position to judge whether any such

misrepresentations such as those alleged by Cooper took place at the earlier Trademark Office proceeding.

Plaintiff next argues that the caselaw of the Third Circuit dictates that color alone is not capable of appropriation as a trademark. They refer to what is known as the color depletion theory, which plaintiff argues has been the law in this circuit for decades. The case of *Campbell Soup Co. v. Armour & Co.*, 175 F.2d 795 (3d Cir.), *cert. denied*, 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518 (1947), established the color depletion theory, which provides that "there are a limited number of colors in the palette, and that it is not wise policy to foster further limitation by permitting trademark to deplete the reservoir." The color depletion theory has historically been the most widely used justification for denying trademark right to colors. The goal of maintaining free availability of all colors has served to bar protection of the color marks.

A case that has been widely discussed regarding this matter, is *In re Owens–Corning Fiberglas Corp.*, 774 F.2d 1116, 1120 (Fed.Cir.1985). The court squared its reasoning with that of the earlier Third Circuit *Campbell Soup* decision, when it said, "This (color depletion) theory is not faulted for appropriate application, but following passage of the Lanham Act, courts have declined to perpetuate its per se prohibition which is in conflict with the liberating purposes of the Lanham Act. There are examples where, in determining registrability of trademark based upon color, the Lanham Act has been applied with exercise of judgment, as Congress intended ... The standard for registrability was that the color be arbitrarily applied to the goods, in a distinctive way. Contrary to an absolute prohibition on registrability of color marks, administrative and judicial implementation of the statute illustrates that each case is decided upon its facts." The court then went on to allow the insulation manufacturer to register as a trademark the color pink, its product color.

*Owens–Corning* was later analyzed by a court of this circuit in the case of *Nor–Am*

*Chemical v. O.M. Scott & Sons Co.*, 4 U.S.P.Q.2d 1316, 1987 WL 13742 (E.D.Pa. 1987). The court noted that "Of particular interest here, the *Owens–Corning* court reconciled its holding with that of the Third Circuit in *Campbell Soup Co. v. Armour & Co.*, 175 F.2d 795 (3d Cir.1947) ... In this circuit, *Campbell Soup*, its progeny, and the color depletion theory are still binding legal precedent. *See, e.g., American Greetings Corp.* [*v. Dan–Dee Imports, Inc.*,] 807 F.2d [1136] at 1149; [ (3d Cir. 1986)]; *Smithkline Beckman,* [*Corp. v. Pennex Products Co.*,] 605 F.Supp. [746] at 750 [ (E.D.Pa.1985)]; *Funnelcap, Inc. v. Orion Indus., Inc.*, 421 F.Supp. 700, 711 n. 38 (D.Del.1976)."

After studying the evidence, the court in *Nor–Am* found that "My reading of *Owens–Corning* leads me to conclude that its facts are inapposite to those of the case at bar. In this case, Nor–Am adduced no evidence regarding the extent to which the consuming public understands Nor–Am to be the source of blue fertilizer, in contrast to the showing in *Owens–Corning* that 50% of the public knew the source of the pink colored insulation product." *Id.* at 1316. One commentator took the decision to mean that "This case is not necessarily inconsistent with *Owens–Corning.* The plaintiff simply did not make a convincing showing of secondary meaning, and therefore did not meet the requirements of *Owens–Corning.*" Thomas A. Schmidt, *Creating Protectable Color Trademarks*, 81 Trademark Rep. 285, 291 (1991).

The same observer noted:

After a careful review of the Lanham Act, it is apparent that the Act itself does not necessarily foreclose the registration of color per se. The decision in the case of *In re Owens–Corning* outlines the somewhat daunting conditions that are necessary for a color mark to be protected. First, there must not be a competitive need for color within the particular market. Second, the use of color must be non-functional and non-utilitarian. Third, the registrant must show that the color mark has achieved secondary meaning under Section 2(f) of the Lan-

ham Act. While the *Owens–Corning* decision does have precedential value, it is somewhat difficult to meet the evidentiary standards set forth in the decision ... The Ninth Circuit as well as district courts in Colorado and Pennsylvania appear to acknowledge the narrow exception created by the *Owens–Corning* decision, to varying degrees. 81 Trademark Rep. at 301.

This court agrees with the commentator that the color depletion theory presents only a narrow exception at best, but the court can envision a set of circumstances whereby the trademark registrant would possess a degree of factual similarity to the *Owens–Corning* case to maintain a viable cause of action.

The court is also impressed with the argument that the provisions of the Lanham Act should be given liberal construction, and that one who has obtained a valid trademark in compliance with the Act such as Channellock should not lightly be denied that property right. Congress intended, as shown in the legislative history of the Lanham Act, a broad revision of trademark law achieving "substantive as distinguished from merely procedural rights in trademarks." S.Rep. No. 1333, 79th Cong., 2d Sess. 5, *reprinted in* 1946 U.S.Code Cong. & Ad.News 1274, 1277. Quoting this report, the Supreme Court has reiterated that: Congress determined that "a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them ... The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the good will of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 661, 664, 83 L.Ed.2d 582, 224 U.S.P.Q. 327, 329, 331 (1985), *In re Owens–Corning, supra*, 774 F.2d at 1119.

One can read the guidance of the Supreme Court in *Park 'N Fly* and the language of the Lanham Act itself to mean that one such protection afforded a trademark registrant is to not have the mark declared invalid in a summary manner prior to all of the facts being presented. Using the Third Circuit standard put forth in *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir.1989), this court determines that the evidence is not so one sided that a "fair-minded" jury could not "reasonably decide" for Channellock in the present controversy, and find the trademark issued at U.S. Registration No. 1,535,106 to be valid. As a result, the granting of summary judgment is not appropriate at this time.

Disputes between parties as to trademark validity and infringement can rarely be determined satisfactorily on a motion for summary judgment. *Frederick Warne & Co., Inc. v. Book Sales, Inc.*, 481 F.Supp. 1191, 1195, 205 U.S.P.Q. 444, 447 (S.D.N.Y. 1979). Given the difficulty, indeed novelty, of the issues presented, full development of the facts at trial will be particularly important to a proper resolution of this case. *Id.* Summary judgment has been termed peculiarly inappropriate in the area of unfair trade practices. *Armstrong Cork Co. v. World Carpets, Inc.*, 76 F.R.D. 613, 614, 198 U.S.P.Q. 526, 527 (N.D.Ga.1977). This court acknowledges the well-established judicial dislike of the disposition of complex trademark infringement and unfair competition cases through the use of summary proceedings. *Lebow Bros., Inc. v. Lebole Euroconf S.p.A.*, 212 U.S.P.Q. 690, 692, 1980 WL 30362 (E.D.Pa.1980).

Channellock has gone to great expense and effort to secure its current trademark in the shade of color "Channellock Blue." It deserves to have a full hearing before a "fair-minded" jury so that a "reasonable" decision may be made regarding the validity of its trademark. *Williams v. Borough of West Chester, Pa., supra*, 891 F.2d at 460. For all of the above reasons, the motion of plaintiff Cooper Industries, Inc. for summary judgment will be denied.